# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL DUGAIS,

    Petitioner,

vs.

BRIAN WILLIAMS, *et al.*,

    Respondents.

Case No. 2:12-cv-00740-KJD-VCF

**ORDER**

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Nevada state prisoner. This matter comes before the Court on the merits of the petition.

**I. Procedural History**

On September 27, 2004, the State filed an amended criminal complaint charging petitioner with the following: Count 1, conspiracy to commit robbery; Count 2, burglary while in possession of a deadly weapon; Counts 3, 6, and 8, robbery with the use of a deadly weapon; Count 4, first degree kidnaping with the use of a deadly weapon; Count 5, attempted murder with the use of a deadly weapon; and Counts 7 and 9, second degree kidnaping with the use of a deadly weapon. (Exhibit 5).[1] Following the preliminary hearing, the defense successfully moved to dismiss Counts 4, 7, and 9. (Exhibit 6). The justice court ordered petitioner bound over on Counts 1, 2, 3, 5, 6, and 8. (*Id.*).

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 11-13.

On October 21, 2004, the State filed an amended information in the Eighth Judicial District Court for the State of Nevada, charging petitioner with the following: Count 1, conspiracy to commit robbery; Count 2, burglary while in possession of a deadly weapon; Counts 3, 5, and 6, robbery with the use of a deadly weapon; and Count 4, attempted murder with the use of a deadly weapon. (Exhibit 9). Petitioner pled not guilty to all counts. (Exhibit 7, Minutes of 10/21/04). The court scheduled petitioner's trial to commence on January 4, 2005. (*Id.*). After several continuances at the request of both the State and the defense, the court rescheduled the trial to commence on January 23, 2006. (Exhibit 7, Minutes of 9/29/05). On January 19, 2006, petitioner's counsel requested the trial be rescheduled because counsel would be in a civil trial the following week. The court denied the motion to reschedule trial, noting that petitioner was in custody and the trial had been continued five times in two years. (*Id.*, Minutes of 1/19/06).

Pursuant to plea negotiations, on January 20, 2006, the State filed a second amended information, charging petitioner with Count 1, robbery with the use of a deadly weapon, and Count 2, attempted murder with the use of a deadly weapon. (Exhibit 22). Petitioner plead guilty to the two charges in the second amended information. (Exhibits 21 & 23). On April 6, 2006, the court filed the judgment of conviction. (Exhibit 26). Petitioner was sentenced as follows: Count 1, 30-120 months, plus an equal and consecutive term of 30-120 months for use of a deadly weapon; Count 2, 36-144 months, plus an equal and consecutive term of 36-144 months for the use of a deadly weapon. (Exhibit 26). The court ordered that Counts 1 and 2 would run consecutively. (*Id.*). Petitioner was credited with 581 days for time served. (*Id.*).

Petitioner did not file a direct appeal. On March 23, 2007, petitioner filed a *pro se* post-conviction habeas petition in the state district court. (Exhibit 29). Following the appointment of counsel, petitioner filed an amended post-conviction habeas petition on April 16, 2009. (Exhibit 37). On August 23, 2010, the state district court held an evidentiary hearing concerning the petition. (Exhibit 47). At the conclusion of the hearing, the court verbally denied the petition. (*Id.*, at p. 149). On December 20, 2010, the state district court issued written findings of fact, conclusions of law, and order denying the petition. (Exhibit 48).

Petitioner appealed from the denial of his state post-conviction habeas petition. (Exhibit 49). The Nevada Supreme Court granted post-conviction counsel's motion to withdraw. (Exhibits 51 & 52). Thereafter, petitioner proceeded *pro se* in the appeal. On October 5, 2011, the Nevada Supreme Court affirmed the denial of petitioner's state post-conviction habeas petition. (Exhibit 54). The Nevada Supreme Court denied petitioner's request for a rehearing. (Exhibit 56). Remittitur issued on May 11, 2012. (Exhibit 57).

On or about April 23, 2012, petitioner dispatched his federal habeas petition to this Court. (ECF No. 6).[2] The petition contains one ground, in which petitioner alleges that his counsel was ineffective for failing to thoroughly investigate the case and for advising petitioner to enter into a guilty plea. (*Id.*). Respondents filed an answer on December 17, 2012. (ECF No. 10). Petitioner's reply to the answer was filed on April 17, 2013. (ECF No. 14).

**II. Petitioner's Renewed Request for the Appointment of Counsel**

In the reply, petitioner makes a renewed request for the appointment of counsel. (ECF No. 14, at pp. 1-2). Petitioner has no constitutional right to appointed counsel in a federal habeas corpus proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 428 (9th Cir. 1993). The decision to appoint counsel is within the Court's discretion. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984). As this Court determined in its order filed October 3, 2012, the petition on file in this action is sufficiently clear in presenting the issues that petitioner wishes to bring. The issues in this case are not complex. Counsel is not justified in this instance. Petitioner's renewed request for the appointment of counsel is denied.

**III. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

---

[2] The petition does not indicate when petitioner gave the petition to correctional staff for mailing. However, petitioner signed the petition on April 23, 2012. (ECF No. 6, at p. 12).

-3-

>with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks

-4-

to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**IV. Discussion**

Petitioner alleges that he was deprived of the effective assistance of counsel when his attorney, Mr. Kennedy, failed to investigate the facts, evidence, and circumstances of his case, and advised him to enter into a guilty plea. (ECF No. 6).

**A. Standard for Ineffective Assistance of Counsel**

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show, first, that counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms. *Id.* at 688-90. Second, the petitioner must demonstrate that the identified acts or omissions of counsel prejudiced his defense. He must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a plea has been defined as follows:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra*, and *McMann v. Richardson, supra*. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The modified *Strickland* prejudice standard in guilty plea cases asks whether there is a reasonable probability that, but for counsel's alleged errors, defendant would not have pleaded guilty, but would have insisted on going to trial. *Id.; see also Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1997).

**B. Analysis**

Petitioner alleges that his counsel, Mr. Kennedy, was ineffective for failing to investigate his case. Specifically, petitioner alleges that counsel failed to obtain, review, and investigate a video of victim Croman's house that was obtained during surveillance of the home by the Las Vegas Metropolitan Police Department at the time of crimes. Petitioner claims that the video showed factual discrepancies and evidence that would have raised reasonable doubt as to his guilt. Petitioner alleges that his counsel ceased investigating once the last motion to continue the trial was denied and thereafter advised and compelled petitioner to plead guilty to two of the six felony counts. (ECF No. 6). Pursuant to the plea agreement, petitioner plead guilty to one count of robbery with the use of a deadly weapon, and one count of attempted murder with the use of a deadly weapon. (Exhibit 21).

During litigation of the post-conviction habeas petition filed in state court, petitioner's former counsel, Mr. Kennedy, submitted an affidavit in support of the State's response to the petition, contradicting claims regarding his possession and review of the surveillance video. Kennedy stated that the surveillance video was made available to him for review and that, as part of his trial preparation, he reviewed all available discovery and investigated the nature of the case. (Exhibit 38, at Exhibit 1). Counsel's preparation included a review of potential defenses, and he determined that there were several problems which affected his formulation of a viable defense in the case. (*Id.*). Kennedy further provided rationale as to why he chose not to hire an investigator – because, after reviewing the evidence, it was his determination that a jury was not petitioner's best option since evidence and eyewitnesses placed petitioner at the scene of the crime, and petitioner's multiple gunshot wounds were beyond any reasonable explanation to make before a jury. (*Id.*). Kennedy further explained that there was no valid explanation to support a defense that petitioner was not at the crime scene or that he was the victim in the case. (*Id.*).

At the evidentiary hearing on petitioner's post-conviction habeas petition, Kennedy testified that he attempted to have his civil trial, which conflicted with petitioner's criminal trial, rescheduled, but was unsuccessful. (Exhibit 47, at pp. 5, 8). When the criminal court indicated that it would deny a motion to continue trial, Kennedy tried to resolve petitioner's case, as he already had an offer from the State pending and he had previously talked to petitioner about the plea deal. (*Id.*, at pp. 9-10, 12). Kennedy testified that he had several discussions with petitioner regarding the case, including these issues: the seriousness of the case; that the victims were not particularly sympathetic because at least one or two were involved in dealing drugs, but that they were still citizens; that there was no good reason for petitioner to be at the home when the gunfight erupted and he was shot; and what would be the best option for petitioner. (*Id.*, at pp. 14, 17). Kennedy testified as to his view of the case: that there was no defense based on alibi or self-defense; that petitioner was identified at the preliminary hearing by the victims; that petitioner was found in the SUV that was seen leaving the scene with multiple gunshot wounds and evidence from the home in the SUV. (*Id.*, at pp. 16-17, 29, 60, 76). Kennedy testified that he felt that a plea deal was the best option, and that going to trial would not be successful due to the seriousness of the charged crimes. (*Id.*, at p. 12).

At the evidentiary hearing in state court, post-conviction counsel played the surveillance tape. (Exhibit 47, at p. 41). The parties identified petitioner as the driver of the SUV. (*Id.*, at pp. 42-44). The SUV drove up at 4:22 p.m. on the day in question. (*Id.*, at p. 42). At 4:28 p.m., three individuals, including petitioner, came out of the house running and shooting, and petitioner was carrying a bag. (*Id.*, at p. 48). On the video it appeared that petitioner was not one of the shooters. (*Id.*, at p. 49).

After seeing the video, Kennedy testified that he recalled seeing the video at the justice court but did not know if he ever had the video itself in his possession. (Exhibit 47, at p. 57). He did not take a copy of the video tape to the jail for petitioner to watch. (*Id.*, at pp. 20-21). Kennedy testified that the that the video raised some questions. (*Id.*, at p. 58). However, under the law at the time, while attempted murder required specific intent to kill, a defendant could aid and abet another to commit attempted murder. Kennedy testified that there were arguments that could have been made,

but he did not advise petitioner to go to trial due to the risk involved. Kennedy talked to petitioner about going to trial, but even with the defense theories raised by post-conviction counsel, petitioner could have easily been convicted on the charges had he gone to trial. (*Id.*, at pp. 58, 60, and 76).

Kennedy testified that, had petitioner gone to trial and been convicted of all counts, he faced at total of 151 years of incarceration. (Exhibit 47, at p. 70). Kennedy testified that he felt this was a case that required a plea deal, and that even after seeing the video again, he felt that the best resolution in this case was to present the plea deal to his client and to advise his client to take the deal given the factual scenario of the case. (*Id.*, at pp. 71-72, 74). Kennedy testified that, even if the court had granted a continuance, he felt that a plea negotiation was the appropriate resolution to the case, rather than going to jury trial and risking extra years of incarceration. (*Id.*, at p. 75).

Petitioner also testified at the evidentiary hearing. (Exhibit 47, at p. 80). Petitioner testified that the evidentiary hearing was the first time he had seen the video. (*Id.*, at p. 81). Petitioner testified that Kennedy told him the video did not exist or that he could not obtain the video from the State. (*Id.*, at pp. 81, 120). Petitioner then testified as to his version of the crimes. (*Id.*, at pp. 82-133). Petitioner's version differed only slightly from the three victims regarding what happened inside the home. Petitioner admitted that he and his accomplices entered the home armed; that he was the first to draw a weapon; that he went to the home with the intent to get his marijuana and money; and that he forced Croman to give him the marijuana and money. He further testified that the shootout did not start inside the home but outside and that his accomplices were involved in the shooting, not him. (*Id.*).

Petitioner testified that Kennedy came to the jail about 45 minutes before he entered his plea. (Exhibit 47, at p. 119). Petitioner testified that he entered his plea based on Kennedy's advice. (*Id.*, at p. 120). Petitioner testified that if he had seen the video, he would have rather been found guilty of something he knew he was doing. (*Id.*, at p. 122). Petitioner admitted that he had robbed Croman. (*Id.*). He testified that he never tried to kill Croman, and never had any intention of hurting Croman. (*Id.*). Petitioner testified that he knew that what he did was wrong before he saw the videotape. (*Id.*, at pp. 122-23). Petitioner testified that he did not believe he would have received 151 years in prison. (*Id.*, at p. 123).

Under *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984), a petitioner must show that counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms. Petitioner fails to demonstrate how further investigation would have benefitted him. Petitioner's allegations that Kennedy failed to thoroughly review the surveillance video tape are belied by the record. Further, the State's evidence did not rely entirely on the video. As demonstrated from the preliminary hearing, the State relied on the testimony of the three victims in the case who positively identified petitioner and whose testimony corroborated the series of facts which implicated petitioner in the crimes. (*See* Exhibit 47, at pp. 38-39) (Kennedy's testimony that the State did not need the video to prove the case against petitioner).

The video would not have assisted in petitioner's defense because it did not show what occurred inside the home; it did not demonstrate petitioner's intent upon entering the home; and it did not demonstrate that petitioner did not conspire with his accomplices in the attempted murder of Croman. That the victims were or might have been involved with drugs was not a defense to the offenses with which petitioner was charged. Kennedy did attempt to cross-examine Croman at the preliminary hearing regarding charges filed against him in federal court, but Croman invoked his Fifth Amendment right against self-incrimination. (Exhibit 6, at p. 82).

The record indicates that petitioner's counsel, Kennedy, made a strategic choice, after considering the case as a whole, in advising petitioner to enter into a guilty plea agreement to two counts. The record belies petitioner's claim that Kennedy failed to obtain or review the surveillance video regarding the incident. Kennedy testified that, even after viewing the video again at the evidentiary hearing, he would not have changed his decision that a plea agreement, rather than a jury trial, was in petitioner's best interest. Petitioner has failed to demonstrate that Kennedy's representation fell below an objective standard of reasonableness, based on prevailing professional norms.

The modified *Strickland* prejudice standard in guilty plea cases asks whether there is a reasonable probability that, but for counsel's alleged errors, defendant would not have pleaded guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Petitioner presents no evidence that he would have achieved a more favorable result if Kennedy had

done more investigation regarding the surveillance video and theories of defense. Under the plea agreement, petitioner plead guilty to two felony counts, verus a total of six counts that he would have had to face at a jury trial. Petitioner received a substantial benefit under the plea agreement. Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. As such, petitioner has failed to demonstrate prejudice.

> First, appellant claimed that counsel was ineffective for failing to investigate the surveillance tape and the inconsistent statements provided by the victims in this case. Appellant failed to demonstrate that counsel was deficient or that he was prejudiced. At the evidentiary hearing, counsel testified that he viewed the surveillance tape at the preliminary hearing and determined that it would not be helpful. Further, appellant failed to demonstrate a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial had counsel investigated those issues. Appellant was originally charged with conspiracy to commit robbery, burglary while in possession of a firearm, attempted murder with the use of a deadly weapon, and three counts of robbery with the use of a deadly weapon. Appellant received substantial benefit by pleading guilty because he ultimately pleaded guilty to one count of robbery with the use of a deadly weapon and one count of attempted murder with the use of a deadly weapon. Further, appellant failed to demonstrate that the surveillance video or the inconsistent statements by the victims would have negated any of the crimes that appellant was charged with. Therefore, the district court did not err in denying these claims.

Petitioner raised his ineffective assistance of counsel claim on appeal from the denial of his state post-conviction habeas petition. The Nevada Supreme Court rejected the claim, as follows:

(Exhibit 54, at p. 2). Petitioner has failed to demonstrate that his counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has not shown a reasonable probability that, but for counsel's alleged errors, that he would not have pleaded guilty, but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, this Court denies relief on the federal habeas petition.

**V. Certificate of Appealability**

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); see *also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this Court's denial of the petition debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

**VI. Conclusion**

**IT IS THEREFORE ORDERED** that petitioner's renewed request for the appointment of counsel (ECF No. 14) is **DENIED.**

**IT IS FURTHER ORDERED** that the federal petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this __18__ day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE